UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| TRAVEL MACHINE LA. LLC | CIVIL ACTION NO. 6:21-0635 |
| VERSUS | JUDGE JUNEAU |
| STATE FARM FIRE & CAS. CO. | MAGISTRATE JUDGE WHITEHURST |

**REPORT AND RECOMMENDATION**

Before the Court is the Motion to Dismiss pursuant to F.R.C.P. Rule 12(b)(6) [Doc. 14] filed by the defendant, State Farm Fire & Casualty Co. ("State Farm"). Plaintiff, Travel Machine Louisiana LLC ("Travel Machine") opposes the motion [Doc. 17], and State Farm filed a reply brief [Doc. 24]. The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that State Farm's Motion to Dismiss be GRANTED.

**Factual Background**

The Covid-19 pandemic and the federal, state, and local governments' responsive actions are well-known. Like most, if not all, other government leaders,

Louisiana Governor John Bel Edwards issued a series of executive orders directing all but essential workers to stay home as the pandemic raged [25 JBE 2020, March 11, 2020, with supplementals notices at Doc. 14-5, 8, & 9]. The stay-home orders have prompted a wave of litigation by business owners seeking compensation from their insurers for business interruption and losses caused by their customers', clients', and patients' inability to conduct business. This is one such suit.

Plaintiff, a travel agency, filed a Complaint for Declaratory Judgment in this Court on March 11, 2021 [Doc. 1], seeking coverage under a business policy for business losses due to the Covid-19 pandemic. In the instant motion, State Farm seeks dismissal of plaintiff's suit on the grounds that the State Farm policy does not provide coverage for the alleged loss of use or business interruption. State Farm's primary defense is that the Covid-19 virus did not cause a covered loss or property damage to plaintiff's business.

## Law and Analysis

### I. Applicable Law

"In diversity cases, a federal court must apply federal procedural rules and the substantive law of the forum state." *Hyde v. Hoffmann-La Roche, Inc.,* 511 F.3d 506, 510 (5th Cir. 2007).

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir.2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). Conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555

(quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

The Court must apply Louisiana substantive law relative to interpretation of insurance contracts. The Fifth Circuit summarized applicable Louisiana insurance interpretation law as follows:

> "Under Louisiana law, insurance policies are contracts between the parties and 'should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.'" "When interpreting a contract, the court must discern the parties' common intent." "The parties' intent as reflected by the words in the policy determine[s] the extent of coverage."
>
> Where the terms of the contract are clear and explicit and do not lead to absurd consequences, no further interpretation may be made in search of the intent of the parties." "'[W]ords of a contract must be given their generally prevailing meaning,' but '[w]ords of art and technical terms must be given their technical meaning when the contract involves a technical matter.'" "Each provision in [the] contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."
> "An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written."
>
> "If the insurance contract terms are ambiguous, these ambiguities are generally strictly construed against the insurer and in favor of coverage." "This rule of strict construction 'applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance

4

policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.'"

*Richard v. Anadarko Petroleum Corp.,* 850 F.3d 701, 713 (5th Cir. 2017). (cleaned up).

Considering the foregoing legal precepts, the Court shall consider whether plaintiff's claims justify a finding of coverage under its State Farm policy.

## II. The Virus Exclusion

In the instant motion, State Farm argues that the plaintiff's claim is barred by the policy's Virus Exclusion provision, which provides:

**SECTION I – EXCLUSIONS**[1]

1. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
…
    j. Fungi, Virus or Bacteria

    [. . .]

---

[1] Ordinarily, in ruling on a Rule 12(b)(6) motion, the Court is limited to the allegations of the complaint and any exhibits attached thereto; however, the court may also consider documents attached to the defendant's motion if they are referenced in the complaint and central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007). The State Farm policy is referenced in the complaint and is central to plaintiff's claims.

> (2) Virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease . . .[2]

In response, Travel Machine contends the Virus Exclusion does not bar coverage, because Travel Machine is not alleging that the virus was present or caused the shutdown of the plaintiff's business. Rather, Travel Machine argues that the governmental orders issued by the Governor caused the closure. Thus, Travel Machine asserts that the Virus Exclusion bars only "viral contamination," which is distinct from the COVID-19 pandemic. Travel Machine also argues that COVID-19 is a pandemic and the Policy does not exclude coverage for "Pandemic Events."

The Court finds that the plain language of the Virus Exclusion precludes Travel Machine's claim for coverage. At least two Louisiana federal district courts have come to similarly conclusions. In *Muriel's New Orleans, LLC v. State Farm Fire & Cas. Co.*, 2021 WL 1614812, at *9–10 (E.D. La. Apr. 26, 2021), in response to an identical argument, the court stated in dicta:[3]

> Here, the Court finds that the Virus Exclusion unambiguously excludes coverage for losses resulting from COVID-19. The Centers for Disease Control and Prevention ("CDC") defines COVID-19 as "a new virus ... 'CO' stands for corona, 'VI' for virus, and 'D' for disease."[147]

---

[2] *See* Policy of Insurance, attached as Exhibit A to State Farm's Motion to Dismiss, Doc. 14, at pp. 5-6, Section 1 – Exclusions j(2).

[3] In *Muriel's*, Judge Brown noted that, because Muriel's did not adequately allege direct physical loss to the covered property, the court did not need to determine whether the Virus Exclusion precluded coverage in that case. However, the court noted that even if Muriel's had alleged direct physical loss to the covered premises, the Virus Exclusion barred the plaintiffs' claim. 2021 WL 1614812 at *9.

Therefore, COVID-19 falls squarely within the language of the Virus Exclusion. Notably, despite Muriel's assertion that the Virus Exclusion requires "viral contamination," the text of the Virus Exclusion includes nothing about a contamination requirement.

[ . . . ]

Like in *Spector*, the Closure Orders issued by Mayor Cantrell and Governor Edwards are derivative of the COVID-19 outbreak. Stated differently, the Closure Orders were issued either concurrently, or in sequence with, the spread of COVID-19 across the State of Louisiana. Therefore, the excluded event—COVID-19—remains part of the causal chain that resulted in Muriel's alleged losses and coverage is barred by the Virus Exclusion.

Second, the Court disagrees with Muriel's argument that because the Policy does not explicitly exclude "pandemics" or "communicable diseases," the Policy provides coverage for Muriel's alleged losses. Although the exclusionary language could have been more clear, "[t]he fact that an exclusion could have been worded more explicitly does not necessarily make it ambiguous."

Similarly, in *Q Clothier New Orleans LLC v. Twin City Fire Insurance Co.*, 2021 WL 1600247 (E.D. La. Apr. 23, 2021), Judge Lemelle granted judgment on the pleadings in favor of the defendant insurer on nearly identical claims. In *Q Clothier*, the plaintiff alleged that it sustained business losses as a result of Louisiana government orders restricting the operations of non-essential businesses that were issued to minimize the spread of COVID-19. The court found that Q Clothier failed to allege that "its property sustained physical and demonstrable alteration," as required for coverage under the

policy and Louisiana law. *Id.* at *7. The court also held that the policy's virus exclusion barred the plaintiff's claims, as a matter of law, because the COVID-19 virus was in the chain of causation since the government orders, as here, were issued to reduce the spread of the virus. *Id.* at *7-9. *Accord Diesel Barbershop, LLC v. State Farm Lloyds*, 479 F.Supp.3d 353 (W.D. Tex. Aug. 13, 2020) (interpreting similar Texas insurance policy).

Considering the foregoing, the undersigned concludes that the policy does not provide coverage for the business losses claimed because the Virus Exclusion unambiguously excludes loss caused by virus.

## II. Accidental, direct physical loss

State Farm also argues that Travel Machine's claim fails because the plaintiff has not alleged it suffered the required "accidental direct physical loss" to Covered Property. "Section I – PROPERTY" of the Policy states:

> When a Limit Of Insurance is shown in the Declarations for that type of property as described under **Coverage A – Buildings**, **Coverage B – Business Personal Property**, or both, we will pay for accidental direct physical loss to that Covered Property at the premises described in the Declarations caused by any loss as described under **SECTION I — COVERED CAUSES OF LOSS**.[4]
>
> [ . . . ]

---

[4] *See* Policy, at p.3, Section I - PROPERTY.

> We insure for accidental direct physical loss to Covered Property unless the loss is:
>
> **1.** Excluded in **SECTION I — EXCLUSIONS**; or
> **2.** Limited in the **Property Subject To Limitations** provision.

The Policy Endorsement entitled "Loss of Income and Extra Expense" – under which the plaintiff sues – specifically conditions business interruption coverage on "accidental direct physical loss" to Covered Property, as follows:

> **COVERAGES**
>
> **1. Loss of Income**
>
> > **a.** We will pay for the actual "Loss Of Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by accidental direct physical loss to property at the described premises. The loss must be caused by a Covered Cause Of Loss.[5]

Travel Machine acknowledges that it did not suffer physical damage to the covered property, but it argues that "physical damage" is only one cause of "physical loss" of property. Travel Machine argues that its physical location was unable to be used for everyday business, and because it was shuttered by the stay-home order, the structure itself became useless and uninhabitable.

Multiple courts within the Fifth Circuit have addressed this issue and found that the presence of the virus in a building did not cause or equate to physical damage

---

[5] *See* CMP-4705.2 Loss of Income and Extra Expense Endorsement to Policy, p. 1 of 4.

or loss sufficient to trigger coverage. *See e.g. Lafayette Bone & Joint Clinic, Inc. v. Transportation Ins. Co.,* No. 6:21-CV-00317, 2021 WL 1740466, at *3 (W.D. La. May 3, 2021); *Diesel Barbershop LLC v. State Farm Lloyds*, 479 F.Supp.3d 353, 360 (W.D. Tex. 2020); *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, –––– F. Supp. 3d. ––––, 2021 WL 972878, at *5 (W.D. Tex. 2021); and *St. Pierre v. Transportation Ins. Co.,* No. 6:20-CV-01660, 2021 WL 1709380, at *3 (W.D. La. Apr. 29, 2021), citing cases.

This Court agrees with the foregoing line of cases that the presence of the virus does not constitute physical loss or damage sufficient to trigger coverage. This Court agrees with Judge Cain's analysis of a similar policy involving nearly identical claims:

> This court finds no ambiguity in the requirement that the premises suffer a physical loss or damage (regardless of whether "physical" modifies just loss), or in its implications for coverage in this matter. As the Fifth Circuit has noted, "property insurance coverage is triggered by some threshold concept of physical loss or damage to the covered property." *Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006). It has also observed that "[t]he language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper." *Trinity Indus. Inc., v. Ins. Co. of N. Am.*, 916 F.2d 267, 270–71 (5th Cir. 1990). To this end courts within the Fifth Circuit have required a "distinct, demonstrable, physical alteration of the property" to trigger coverage. *Diesel Barbershop LLC v. State Farm Lloyds*, 479 F.Supp.3d 353, 360 (W.D. Tex. 2020) (quoting *Hartford*, 181 F. App'x at 470). Accordingly, every district

> court within the circuit to address the issue has determined that a building's exposure to the coronavirus does not meet this requirement. *Id.*; *see also Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, ––– F. Supp. 3d. –––, 2021 WL 972878, at *5 (W.D. Tex. 2021). LBJC fails to advance any new argument compelling the court to depart from this interpretation, and therefore cannot state a plausible claim for relief under the Business Income/Extra Expense endorsements.

*Lafayette Bone & Joint Clinic, Inc.,* 2021 WL 1740466, at *3. *See also Diesel Barbershop, LLC v. State Farm Lloyds*, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020) (court finds that the line of cases requiring tangible injury to property are more persuasive and that the other cases are distinguishable) and *St. Pierre v. Transp. Ins. Co.,* 2021 WL 1709380, at *2-4 (W.D. La. Apr. 29, 2021) (plaintiff failed to state a claim because it did not allege that any insured property was damaged as required by the policy). To the extent plaintiff relies on *Studio 417, Inc. v. Cincinnati Ins. Co.,* 478 F. Supp. 3d 794, 800 (W.D. Mo. 2020), the Court finds *Studio 417* unpersuasive in light of the above-cited jurisprudence from district courts within the Fifth Circuit.

For the foregoing reasons, the undersigned concludes that coverage for the plaintiff's claims does not exist in the absence of physical damage to the property in question.

### III. Civil authority

State Farm further asserts that Travel Machine fails to state a claim for

coverage under the Civil Authority Endorsement to the Policy.[6] The Civil Authority Endorsement provides as follows:

> 4. Civil Authority
>
> a. When a Covered Cause Of Loss causes damage to property other than property at the described premises, we will pay for the actual "Loss Of Income" you sustain and necessary "Extra Expense" caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply: (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause Of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.[7]

Thus, the Civil Authority Provision provides coverage for loss of income where damage to other property caused by a covered risk causes a civil authority to prohibit access to the insured property, causing loss of income to the insured. State Farm argues the plaintiff has not pled facts that meet the requisite elements to trigger the Civil Authority Provision, and that the Virus Exclusion bars coverage under the Civil Authority Provision, which requires an already Covered Cause of Loss.

Here, the undersigned finds that the plaintiff fails to satisfy either prong of the Civil Authority Provision. First, the plaintiff fails to identify damage to a specific

---

[6] *See* Complaint, ¶¶ 11, 31, 63-75, Doc. 1.
[7] *See* CMP-4705.2 "Loss of Income and Extra Expense" Endorsement.

nearby property from a Covered Cause of Loss. Additionally, the plaintiff fails to identify "dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage" or actions "taken to enable a civil authority to have unimpeded access to the damaged property."

In *Dickie Brennan & Co., Inc. v. Lexington Ins. Co.*, 636 F.3d 683 (5th Cir. 2011), the court addressed the issue of insurance coverage for a type of business interruption insurance. In that lawsuit, the plaintiffs sued their insurer when Lexington denied coverage for the Brennans' losses incurred when they were unable to conduct business during a mandatory evacuation of New Orleans due to a hurricane. In *Dickie Brennan*, the Fifth Circuit stated, generally, that "civil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property." 636 F.3d at 686-87 (citations omitted); *see also Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co.*, 2007 WL 2489711, at *3 (M.D. La. Aug. 29, 2007) (denying civil authority coverage under Louisiana law); *Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*, 2010 WL 4026375, at *3 (E.D. La. Oct. 12, 2010) (Louisiana law) (denying civil authority coverage under Louisiana law).

In *Pappy's Barber Shops, Inc. v. Framers Grp., Inc.*, 487 F. Supp. 3d 937, 945 (S.D. Cal. 2020), the plaintiffs made a claim under an insurance policy issued by defendants for business income losses they incurred as a result of the COVID-19 Civil Authority Orders issued by the mayor of San Diego and the governor of California. Plaintiffs argued, *inter alia*, that coverage existed under the policy's Civil Authority provision. Although the Civil Authority provision in the *Pappy's* case is not identical to the provision in the instant case, the *Pappy's* provision is similar, requiring the following:

> To trigger coverage under this provision, there must be an "action of civil authority that *prohibits access to the described premises* due to direct physical loss of or damage to property, *other than at the described premises*, caused by or resulting from any Covered Cause of Loss." Thus, to survive dismissal, the complaint must, at a minimum, allege that the government (1) prohibited Plaintiffs from accessing their premises (2) due to direct physical loss of or damage to property elsewhere. The allegations in the complaint do not satisfy either requirement.

487 F.Supp.3d at 944-45.

After consideration of the parties' arguments, the court found no coverage, explaining:

> First, the complaint does not allege that any COVID-19 Civil Authority Orders prohibited Plaintiffs from access to their business premises. Rather, it only alleges that Plaintiffs were prohibited from operating their businesses at their premises. Plaintiffs fail to make any distinction between their place of business (i.e., the physical premises where they operate their business), and the business itself, but this distinction is

relevant to coverage under the Policy. The Policy insures property, in this case Plaintiffs' property and physical places of business, and not Plaintiff's business itself. To that end, the civil authority coverage provision only provides coverage to the extent that access to Plaintiff's physical premises is prohibited, and not if Plaintiff's are simply prohibited from operating their business. The government orders alleged in the complaint prohibit the operation of Plaintiff's business; they do not prohibit access to Plaintiffs' place of business.

Second, even if the government orders alleged in the complaint could be construed as prohibiting Plaintiffs from accessing their premises, the orders were not issued due to direct physical loss of or damage to property *other than at Plaintiffs' premises.* Just as the complaint does not plausibly allege any direct physical loss of Plaintiff's property, it also does not allege any direct physical loss or damage to property not at Plaintiffs' places of business. In the opposition, Plaintiff does not argue otherwise, referring only to its arguments under the business income and extra expense provisions that the complaint alleges direct physical loss of or damage to *Plaintiffs'* property. [Doc. No. 18 at 16]; *see generally, 10E, LLC,* 2020 WL 5359653, at *5-6 (finding no civil authority coverage as a result of COVID-19 Civil Authority Orders requiring restaurant to cease indoor operations).

*Id.* at 944–45.

Similarly, the undersigned finds that access to the covered premises was not denied in the instant case, and the plaintiff has not alleged that access was denied. Rather, the plaintiff alleges that it could not conduct its business because of the government ordinance. However, none of the government orders at issue in this case precluded access to the insured premises by owners. Therefore, the plaintiff fails to satisfy the requirements for coverage under the Civil Authority Provision of the policy.

### IV. "Loss of Income" and "Extra Expense" Coverage

Plaintiff alleges that it is entitled to coverage under the Loss of Income and Extra Expense provisions provided by the Endorsement.[8] State Farm argues that under both provisions, coverage is only available where there has been "accidental direct physical loss to property," which does not exist in this case. State Farm further argues that coverage under both of these provisions is barred by the policy's Virus Exclusion, which provides that State Farm "do[es] not insure under any coverage for any loss which would not have occurred in the absence of ... Virus."

The plaintiff's position is that the Virus Exclusion does not apply, and that "damage" under the policy is not limited to accidental physical damage. However, the undersigned has rejected both of these arguments hereinabove. Additionally, a review of the policy shows that Loss of Income and Extra Expense coverage applies only to loss of income and extra expenses sustained due to a "'necessary suspension' of [the insured's] 'operations' during the 'period of restoration.'"[9] The "period of restoration" is defined as the period

---

[8] *See* Complaint at ¶¶ 37-39, 50-52, 65-66, Doc. 1.
[9] *See* CMP-4705.2 "Loss of Income and Extra Expense" Endorsement.

16

during which the property is "repaired, rebuilt or replaced with reasonable speed and similar quality" or until "business is resumed at a new permanent location."[10] In the Complaint, the plaintiff does not allege that any repairs, rebuilding or replacement of any part of the property were made, or that plaintiff moved its businesses to a new permanent location. Thus, Loss of Income and Extra Expense coverage is not available for a suspension of operations where, as here, a shutdown is due to government orders.

For the foregoing reasons, the undersigned finds that there is no coverage under the Loss of Income and Extra Expense provisions provided by the Endorsement.

## Conclusion

Thus, for the foregoing reasons, the undersigned recommends that the Motion to Dismiss pursuant to F.R.C.P. Rule 12(b)(6) [Doc. 14] filed by the defendant, State Farm Fire & Casualty Co., be GRANTED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of

---

[10] *Id.*

Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

**THUS DONE AND SIGNED** at Lafayette, Louisiana, this 14th day of October, 2021.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE